UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE CITY OF NEWARK, MUNICIPAL COUNCIL FOR THE CITY OF NEWARK, RONALD C. RICE** (individually and in his capacity as Councilman for the City of Newark), **DARRIN S. SHARIF** (individually and in his capacity as Councilman for the City of Newark)<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**THE NEWARK WARD COMMISSION AND FRAN ADUBATO, MICHAEL CARSON, LEE FISHER, BETHANY O'TOOLE,** Secretary **LINDA VON NESSI,** each individually and in their official capacities as Commissioners for the Newark Ward Commission<br><br>    **Defendants.** | Civ. No. 12-258 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendants motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is **GRANTED**.

    I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

---

[1] As this is a 12(b)(6) motion to dismiss, the following version of events assumes Plaintiff's allegations in the Complaint are true.

1

The City of Newark is divided into five wards: North, South, East, West, and Central.  Newark's five wards are further subdivided into various districts.  For purposes of this Opinion, it is sufficient to note that pursuant to N.J.S.A. § 40:44-14, the population of Newark must be (more or less) equally divided amongst the five wards, and that after the 2010 United States Census figures were released, Defendant the Newark Ward Commission (the "Commission") was responsible for redistricting Newark's five wards in a manner which comports with that statutory mandate.

Plaintiffs Ronald C. Rice and Darin Sharif are elected councilmen representing Newark's West and Central Wards, respectively.[2]  Plaintiffs seek to challenge the ward redistricting plan approved by the Commission on November 4, 2011, which caused two predominantly Latin American districts in the Central Ward – namely, Districts Central 16 and 19 – to be redistricted to the West Ward.  Plaintiffs allege that this plan "results in segregation of Latin American voters from the Central Ward into the West Ward, [and alters] the racial and ethnic makeup of [those wards]."  (Compl. ¶ 49.)  Plaintiffs claim that the Commission adopted this plan in spite of the existence of two other viable ward redistricting plans involving various other Newark districts.  Plaintiffs do not indicate what the racial make composition is for any of those other districts.

---

[2] The Court notes that ward councilmembers are required to be residents and maintain residency in the ward that they represent.  Newark City Charter, § 40A:9-1.12, 13.

2

On December 19, 2011, Plaintiffs commenced this action in New Jersey Superior Court by filing a Complaint in Lieu of Prerogative Writ seeking to nullify the redistricting plan adopted by the Commission (Count One).  Plaintiffs also allege that the Commission's actions violated New Jersey's Open Public Meeting Act, N.J.S.A. § 10:4-6, *et seq.* (Count Two), New Jersey's Civil Rights Act, N.J.S.A. § 10:6-2(c) (Count Three), as well as the Fourteenth and Fifteenth Amendments of the United States Constitution[3] (Counts Four and Six, respectively), and the Voting Rights Act ("VRA"), 42 U.S.C. § 1973[4] (Count Five).

On January 13, 2012, Defendants removed this action to district court in the light of the federal claims asserted by Plaintiffs.  Thereafter, Defendants filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

### A. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In

---

[3] 42 U.S.C. § 1983 confers this Court with federal jurisdiction over civil claims against persons who, under color of law, deprive a citizen of rights, privileges, or immunities secured by the Constitution. *See, e.g., Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d. Cir. 1995).
[4] Plaintiff's Complaint incorrectly seeks relief under the VRA pursuant to 42 U.S.C. § 2000(d).

deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Twombly*, 550 U.S. at 556). In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007).

**B. The Voting Rights Act**

The Voting Rights Act of 1965 (the "VRA")[5] was enacted "to banish the blight of racial discrimination in voting" in the United States. *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966). In Count Five, Plaintiffs allege that the redistricting scheme adopted by the Commission violates of Sections 2[6] and 5[7] of the VRA.

<u>Section 5 of the VRA</u>

As an initial matter, the Court notes that Section 5 of the VRA only applies geographic regions where voting discrimination has been most flagrant, which are referred to as "covered jurisdictions." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 197 (2009). Because Newark is not a "covered jurisdiction," Section 5 of the VRA is inapplicable in this matter. S*ee* Section 5 Covered Jurisdictions, United States Department of Justice, at http://www.justice.gov/crt/about/vot/sec_5/covered.phps.

<u>Section 2 of the VRA</u>

Section 2, on the other hand, applies nationwide, and forbids any "standard, practice, or procedure" that "results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color." 42 U.S.C. § 1973(a). Such rights are abridged if:

---

[5] 42 U.S.C. §§ 1971-1974(e).
[6] 42 U.S.C. § 1973.
[7] 42 U.S.C. § 1973c.

> based on the totality of circumstances, it is shown that the political processes leading to nomination or election . . . are not equally open to participation by members of a class of citizens protected by [42 U.S.C. § 1973(a)] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

42 U.S.C.A. § 1973(b).

In this case, Plaintiffs claim that the redistricting plan adopted by the Commission "segregated a racial minority into one particular ward, thereby diluting the vote of this racial minority." (Compl. ¶ 78.) As set forth by the Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30, 49-51 (1986), to make out a claim that a legislative districting scheme has diluted a minority group's vote in contravention of Section 2, a plaintiff must allege that: (1) a minority group "is sufficiently large and geographically compact to constitute a majority in a single member district"; (2) and is "politically cohesive," *i.e.*, that it votes as a racial bloc; and (3) "that the white majority votes sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate." *Id.* at 49-51. *See also Bartlett v. Strickland*, 556 U.S. 1, 10-11 (2009); *Page v. Bartels*, 248 F.3d 175, 196 (3d Cir. 2001).

In this matter, Plaintiffs claim that under the challenged redistricting plan, two primarily Latin American districts – Districts Central 16 and 19 –were moved from the Central Ward to the West Ward, and that this has altered the racial make-

6

up of those two wards. However, there are no facts which suggest that the Latin American population in Districts Central 16 and 19 is sufficiently large and geographically compact to constitute a majority in a single member district, much less that it is politically cohesive. Nor do Plaintiffs allege that a white voting bloc exists in the West Ward. In short, under the standard set forth in *Gingles*, Plaintiffs have failed to plead sufficient facts in support of their claim that the redistricting scheme adopted by the Commission has diluted a minority's vote in violation of Section 2 of the VRA.

In light of the foregoing considerations, Defendants' motion to dismiss Count Five will be **GRANTED**.

### C. Plaintiff's Constitutional Claims

Plaintiffs further allege that the reapportionment scheme adopted by the Commission violates the equal protection clause of the Fourteenth Amendment[8] (Count Six) as well as the Fifteenth Amendment[9] (Count Four). The Third Circuit's standard for establishing such violations is set forth in *Page v. Bartels*, 248 F.3d 175, (3d Cir. 2001). Specifically:

> An apportionment scheme will be subject to strict scrutiny under the Fourteenth Amendment's Equal Protection Clause if race is the "predominant factor" in the drawing of district lines. *Bush v. Vera*, 517 U.S.

---

[8] The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1.

[9] The Fifteenth Amendment provides that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, § 1.

> 952, 959, 116 S.Ct. 1941, 135 L.Ed.2d 248 (1996) (plurality opinion); *see also Shaw v. Reno*, 509 U.S. 630, 649, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) (explaining that legislative districting schemes can violate the Fourteenth Amendment's Equal Protection Clause if they "cannot be understood as anything other than an effort to separate voters . . . on the basis of race"). Such a redistricting scheme may also violate the Fifteenth Amendment, at least if done with the purpose of depriving a racial minority group of the right to vote. *See, e.g., City of Mobile v. Bolden*, 446 U.S. 55, 62–63, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980) (plurality opinion); *Gomillion v. Lightfoot*, 364 U.S. 339, 346, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960) (holding that "when a legislature singles out a readily isolated segment of a racial minority for special discriminatory treatment," such as by reconfiguring city boundaries so as to deprive African–American residents of the right to vote in municipal elections, such action "violates the Fifteenth Amendment.").
>
> *Page v Bartles*, at 192-93.

In this case, Plaintiffs have indicated that Districts Central 16 and 19 are predominantly Latin American. However, as pled, it is unclear what the racial composition of any of Newark's other districts is, nor are there any other facts in the Complaint which suggest that the Commission considered the racial composition of Districts Central 16 and 19 when it adopted the challenged ward redistricting plan. In short, as pled, the Court cannot reasonably infer that when the Commission adopted the redistricting plan, race was the predominant factor; that the redistricting plan can only be understood as an effort by the Commission to separate voters on the basis of race; or that the challenged plan was adopted with the purpose of depriving a racial minority group of the right to vote. Thus, Plaintiffs have failed to allege sufficient facts in support of their claim that the

8

challenged redistricting plan violates the Fourteenth or Fifteenth Amendment. Accordingly, Defendants' motion to dismiss Counts Four and Six will be **GRANTED**.

### D. Plaintiffs' State Law Claims

Plaintiffs also allege that the challenged redistricting plan violates New Jersey's Open Public Meeting and Civil Rights Acts. However, at this time, the Court declines to exercise supplemental jurisdiction over these state law claims. 28 U.S.C. § 1367(c)(3) ("the district court[ ] may decline to exercise supplemental jurisdiction [if] the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, the Court will dismiss this matter in its entirety, without prejudice.

## III. CONCLUSION

For the reasons stated above, Defendants' Rule 12(b)(6) motion is **GRANTED** and Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

        /s/William J. Martini
        **WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 28, 2012.**